IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10cv202

| | |
|---|---|
| MELISSA R. ENOCH-DEBERRY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| Vs. | ) |
| | ) |
| MECKLENBURG COUNTY, | )    **MEMORANDUM DECISION** |
| MECKLENBURG COUNTY HUMAN, | )          **AND ORDER** |
| RESOURCES DEPARTMENT, | ) |
| MECKLENBURG COUNTY AREA | ) |
| MENTAL HEALTH AUTHORITY, | ) |
| TRISTEN LORRAINE and TRACY | ) |
| KLUCINA, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

This is an employment discrimination case in which plaintiff has sued her former employer and two individuals for race discrimination. The matter is pending before the court on a motion for summary judgment by defendants (docket #12).

**I.    Background**

Plaintiff, an African-American female, filed a complaint in this court on April 28, 2010, alleging that she was terminated from her job with Mecklenburg County based on race discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. Defendants filed a motion for summary judgment on November 22, 2010. On March 28, 2011, the court sent plaintiff a *Roseboro* letter informing her of her failure to

1

respond to the motion for summary judgment. Plaintiff has filed a response in opposition to the motion for summary judgment, and the matter is ripe for disposition. Furthermore, the court held a hearing on the motion on August 17, 2011.

## II. Facts

On November 7, 2007, plaintiff transferred from her position as a Work Release and Restitution Center Case Manager with the Mecklenburg County Sheriff's Office to a Counselor for Substance Abuse Comprehensive Outpatient Treatment ("SACOT") with Area Mental Health. (Enoch-DeBerry Dep. p. 10; White Aff. ¶ 4; Klucina Aff. ¶ 4).

Plaintiff's position was located at a homeless shelter for men. (Enoch-DeBerry Dep. p. 19; White Aff. ¶ 4; Klucina Aff. ¶ 4). Plaintiff reported directly to Tristen Lorraine, now Tristen White, who was also located at the shelter. (Enoch-DeBerry Dep. p. 19; White Aff. ¶ 4; Klucina Aff. 114). Tristen Lorraine reported directly to Tracy Klucina, Unit Supervisor, managing both the Men's and Women's Shelter programs. Plaintiff's primary role as a counselor was to provide substance abuse treatment for chemically dependent adults who were residents of the men's homeless shelter. (Enoch-DeBerry Dep. p. 18; White Aff. ¶ 5; Klucina Aff. ¶ 5).

Plaintiff engaged in a pattern of failing to meet work expectations early in her employment with SACOT. On January 2, 2008, plaintiff was given a formal coaching based on a pattern of poor attendance during her first two months of employment. (Enoch-DeBerry Dep. pp. 32-35, Ex. 4). On February 15, 2008, plaintiff was given a 1st Written Reminder, which is the first step in Mecklenburg County's progressive disciplinary process.

2

(Enoch-DeBerry Dep. p. 35, Ex. 5; White Aff. ¶ 6; Klucina Aff. ¶ 6). The warning addressed plaintiff's failure to properly document treatment; lack of knowledge about her consumers; timeliness; and inappropriate conduct toward a co-worker on February 8, 2008, when plaintiff engaged in a loud and heated argument with the co-worker during a staff meeting. (Enoch-DeBerry Dep. pp. 44-46; White Aff. ¶¶ 7, 8, 9; Klucina Aff. ¶¶ 8, 9).

Beginning in September 2008, plaintiff's supervisors began to receive consumer complaints against plaintiff. Defendant determined that plaintiff's misconduct towards coworkers and her consumers was destructive and unacceptable. (White Aff. ¶ 10, Exs. 3-5; Klucina Aff. ¶ 10). On September 10, 2008, a consumer submitted a complaint about plaintiff, stating that, among other things, during a counseling session plaintiff had shouted and argued with another group member for some unknown reason, making the customer feel uncomfortable. (White Aff. Ex. 3).

On September 19, 2008, another consumer reported that plaintiff had engaged in inappropriate conduct. (White Aff. ¶ 12; Klucina Aff. ¶ 12). According to the consumer, he had felt humiliated in front of his peers when plaintiff had first said he could graduate from the program, and then when asked about it later, she changed the requirements to say that he could not graduate until he found work. (Enoch-DeBerry Dep. pp. 78-80, Ex. 14; White Aff. ¶ 12; Klucina Aff. ¶ 12). The consumer further stated: "[Plaintiff] got real nasty in front of the other staff []. I truly feel this kind of work is not for her. She has a brutal disposition about herself. . . . I've never seen someone claiming to help you but at the same time destroying your beliefs. She has totally stripped & confused me through this process."

3

(White Aff. Ex. 4, p. 3.)

Also on September 19, 2008, another consumer reported that plaintiff told him during a group session that he needed to see a mental health care person, which the consumer perceived as a putdown. (Enoch-DeBerry Dep. p. 92; White Aff. ¶ 13; Klucina Aff. ¶ 13, Ex. 5, p. 1). The consumer also stated that plaintiff had addressed the group with phrases like, "You people, and "ya'll." The consumer also stated that plaintiff would threaten the group by informing them if they did not do something she asked them to do she would add additional time to their therapy, which was perceived by consumers as a punishment to prolong graduation. (White Aff. Ex. 5, p. 2).

After a period of consultation between Human Resources and management as well as further investigation into the consumer complaints, defendant determined that the seriousness of plaintiff's misconduct moved her from a 1st Written Reminder straight to a "Decision Making Deliberation." (Enoch-DeBerry Dep. pp. 81-82, Ex. 15; White Aff. ¶ 14, Ex. 6, p. 1; Klucina Aff. ¶ 14). On September 23, 2008, plaintiff met with Unit Supervisor Tracy Klucina and Human Resources Consultant Judi Wilkins, Sr., to receive her Decision Making Deliberation, which addressed the severity of her unprofessional conduct while working with consumers, as well as her minimal effort to improve the quality of documentation since receiving the 1st Written Reminder. (Enoch-DeBerry Dep. p. 82; White Aff. ¶ 15; Klucina Aff. ¶ 15).

At the meeting, Klucina and Wilkins informed plaintiff that consumers felt that she was "abrasive, hostile, exhibited anger and a punishing attitude." (White Aff. Ex. 6, p. 1).

4

Plaintiff was also told that consumers also perceived that she would "just snap" and that she was unapproachable and they felt uncomfortable coming to her office door; that consumers felt devalued and that their complaints didn't matter; and consumers felt that plaintiff exhibited a disrespectful and demeaning attitude toward them. *Id*.

At the meeting, plaintiff was also told that it was confirmed that, even after being instructed not to allow consumers to take notes, plaintiff had instructed one of her consumers take notes for her during a group therapy session. (Enoch-DeBerry Dep. pp. 82-83; White Aff. ¶ 16; Klucina Aff. ¶ 16). Plaintiff was also reminded of the necessity for her to provide professional and detailed notes of high quality. (Enoch-DeBerry Dep. p. 83; White Aff. ¶ 17; Klucina Aff. ¶ 17).

After plaintiff received a copy of the Decision Making Deliberation and had an opportunity to discuss it, she was given the opportunity to respond to documented unacceptable conduct and performance issues. (Enoch-DeBerry Dep. p. 84; White Aff. ¶ 18; Klucina Aff. ¶ 18). Additionally, in accordance with Mecklenburg County's Progressive Discipline policy, plaintiff was given the rest of the day off to consider the matter and prepare a response. (Enoch-DeBerry Dep. p. 84; White Aff. ¶ 18; Klucina Aff. ¶ 18).

Plaintiff was instructed to return to work on September 24, 2008, with her decision in writing. *Id*. If plaintiff wanted to remain in her position, she had to return with a written letter of commitment explaining how she would successfully improve her conduct and performance to meet the essential duties and expectations of her job. *Id*. On September 24, 2008, plaintiff returned to work with her Letter of Commitment, which stated, "I will assure

5

completion of accurate and timely work . . . ." Plaintiff further stated, "It is my responsibility to correct these behaviors and I understand that it is the supervisor's responsibility to maintain consistency in accordance with County policy." (Enoch-DeBerry Dep. p. 84, Ex. 16; White Aff. ¶ 19, Ex. 7, p. 2; Klucina Aff. ¶ 19).

About one week later, another consumer complained about plaintiff's conduct. Specifically, on September 30, 2008, a consumer informed Klucina that during a group session plaintiff had entered the room to join another counselor in co-facilitating the discussion. (Klucina Aff. ¶ 20). Although there was an empty chair next to the facilitating counselor, plaintiff yelled at a consumer to get up from his seat so that plaintiff could sit in it. *Id*. The consumer got up from his seat, allowing plaintiff to sit there. *Id*. The witness reported to Klucina that the behavior was demeaning. *Id*.

Once Klucina confirmed with the other counselor in the group that the consumer's complaint was accurate, Klucina called plaintiff into her office. Klucina informed plaintiff that her behavior was interpreted as "rude," "unprofessional," and "demeaning." (Klucina Aff. ¶ 21). Just a few days later, on October 3, 2008, plaintiff did not show up at a group therapy session that she was supposed to co-facilitate along with another counselor. SACOT staffing requires that there be one counselor for every ten consumers during group therapy. (White Aff. ¶ 22, Ex. 8; Klucina Aff. ¶ 22). Furthermore, due to plaintiff's absence, the session was out of compliance with state mandates, which require one counselor for every fourteen consumers. *Id*. By 3:00 p.m. on that same day, plaintiff's managers received several written complaints against plaintiff from consumers. (Enoch-DeBerry Dep. pp.

6

85-91, Ex. 17; White Aff. ¶ 23; Klucina Aff. ¶ 23). The first complaint indicated that plaintiff did not attend her consumer's graduation on September 26, 2008. The consumer stated that he felt plaintiff's absence from the commencement event indicated that she was mad at him, but he was not sure what would have prompted this reaction from her. *Id*. According to defendant, because plaintiff was the consumer's primary counselor she should have been at his commencement, as is the departmental expectation if the counselor is on duty and available. *Id*.

Another complaint stated that plaintiff slammed her office door in a consumer's face on October 2, 2008. (White Aff. ¶ 23, Ex. 10, p. 2). In addition, the consumer stated in the complaint that plaintiff had given him a photograph of a "Weeble Wobble" toy in front of other consumers, which offended the consumer because he is overweight and dealing with low self-esteem. (White Aff. ¶ 23, Ex. 11).

Klucina and White met with plaintiff at 3:30 on October 3, 2008, and asked her why she did not assist in co-facilitating group sessions that day. (Enoch-DeBerry Dep. p. 102; White Aff. ¶ 24; Klucina Aff. ¶ 24). Plaintiff told management that she had spent the day catching up on paperwork, despite that she knew that the SACOT ratio was unacceptable for the group sessions. (Enoch-DeBerry Dep. pp. 102-104; White Aff. ¶ 24; Klucina Aff. ¶ 24).

In the meeting, defendant gave plaintiff further details about the consumer complaints. Defendant placed plaintiff on a paid, non-disciplinary suspension to allow time for more investigation. (White Aff. ¶ 25; Klucina Aff. ¶ 25). Upon investigation of plaintiff's absence from group sessions during the morning of October 3, 2008, defendant discovered that

7

plaintiff had been entering and attesting to false information in the consumers' electronic record database. (Enoch-DeBerry Dep. pp. 104-08, Ex. 20; White Aff. ¶ 26; Klucina Aff. ¶ 26). Plaintiff had entered and attested to discussions involving four consumers, specifically quoting them in her session notes. Defendant discovered that plaintiff had made these entries before the session actually took place. Defendant further discovered that plaintiff had also made notes about a specific consumer who was not even present for the session that day.

Defendant discovered that plaintiff had also entered and attested to information that she stated was from the Inter-Disciplinary Team (IDT) meeting at 3:00 p.m. that day. Plaintiff's notes, however, were entered at 2:00 p.m., i.e., before the meeting. *Id*. At a pre-termination meeting with plaintiff, plaintiff was given the opportunity to explain her conduct, but she was unable to explain her behavior. (White Aff. ¶ 27).

On October 13, 2008, based on the pattern of consumer complaints and falsified documentation, plaintiff's employment was terminated. (Enoch-DeBerry Dep. pp. 109-10, Ex. 21; White Aff. ¶ 27; Klucina Aff. ¶ 27). Plaintiff appealed the termination decision and a grievance hearing was held before an employee review panel. (Enoch-DeBerry Dep. p. 110, Ex. 22; White Aff. ¶ 28; Klucina Aff. ¶ 28). The employee review panel affirmed the decision to terminate plaintiff's employment. *Id*.

### III.  Standard of Review on Summary Judgment

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking

summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a factfinder to return a verdict for that party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

**IV.   Analysis**

**A.   Plaintiff's Title VII Claim for Race Discrimination Against Defendant Mecklenburg County**

Title VII makes it unlawful for an employer:

to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

9

42 U.S.C. § 2000e-2(a)(1). To satisfy ordinary principles of proof in discrimination cases, a plaintiff must provide direct evidence of a purpose to discriminate or circumstantial evidence of sufficiently probative force to raise a genuine issue of material fact. *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988). Because it is often difficult for a plaintiff to provide direct evidence of discriminatory intent, the Supreme Court has created a burden-shifting structure for analyzing such claims. *See McDonnell Douglas v. Green*, 411 U.S. 792 (1973). Under this burden-shifting structure, known as the "McDonnell Douglas" framework, the plaintiff must plead facts sufficient to create an inference that an adverse employment decision was based on impermissible considerations. In an employment discrimination case based on termination, this may be done by showing that (1) the plaintiff is a member of a protected class; (2) the plaintiff was terminated; (3) that at the time of the termination the plaintiff was meeting her employer's legitimate expectations; and (4) the action took place under conditions establishing an inference of discrimination. *See King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003).

Once a plaintiff establishes a prima facie case, the burden then shifts to the defendant to demonstrate a legitimate, nondiscriminatory reason for the challenged action. *McDonnell Douglas*, 411 U.S. at 802. If the employer demonstrates a legitimate, nondiscriminatory reason, the presumption of unlawful discrimination created by the prima facie case "drops out of the picture," and the burden shifts back to the employee to show that the given reason was merely a pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993); *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 57-58 (4th Cir. 1995).

The responsibility of proving that "the protected trait . . . actually motivated the employer's decision" remains with the plaintiff at all times. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). To overcome a motion for summary judgment in such a case, a plaintiff must provide direct or circumstantial evidence "of sufficient probative force" to show a genuine issue of material fact exists as to this question. *Goldberg*, 836 F.2d at 848. With these principles in mind, the court now turns to plaintiff's race discrimination claim. Because plaintiff has failed to provide any direct evidence of race discrimination, the Court must apply the burden-shifting framework of *McDonnell Douglas*.

Plaintiff has failed to meet a prima facie claim of race discrimination because she has failed to satisfy the third prong of the prima facie case. That is, plaintiff has failed to show that she was meeting defendant's legitimate expectations when she was fired. The evidence clearly supports defendant's contention that plaintiff's performance and her conduct fell well below defendant's legitimate expectations.

Plaintiff has admitted to almost all of the conduct that defendant cited as the reasons for the termination decision. (Enoch-DeBerry Dep. pp. 32-35; 37-47; 72-83). She has admitted that consumers had filed complaints against her, and she has admitted many of the statements and actions that were attributed to her by the consumers. She has also admitted that she provided false and inaccurate information in the clinical records. (Enoch-DeBerry Dep. pp. 104-08, Ex. 20). Plaintiff argued in her deposition that her supervisors should have provided her better training and support. She questions the merits of the decision to

11

terminate her employment and thinks she should have had another chance.[1] Plaintiff is essentially asking this court to second-guess the decision to terminate her employment. It is well-settled, however, that federal courts "do not sit as a 'super-personnel department' weighing the prudence of employment decisions made by defendants." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248 (4th Cir. 2005). In sum, defendant Mecklenburg County is entitled to summary judgment as to Plaintiff's race discrimination claim based on her termination.

Plaintiff has also presented a theory of disparate treatment to support her race discrimination claim. Plaintiff believes she received disparate treatment because a similarly situated employee, Teresa Boger, who is white, received more favorable treatment than plaintiff. Boger also worked as a counselor for SACOT. Boger's employment began on March 13, 2007, and she was fired on October 28, 2009, for failure to meet attendance requirements. (White Aff. ¶ 30; Klucina Aff. ¶ 30). Boger was given a 1st Written Reminder on July 23, 2007, due to failing to meet attendance expectations. (White Aff. ¶ 32). She was given a 2nd Written Reminder on June 5, 2009, due to the same type of attendance issues. (White Aff. ¶ 32; Klucina Aff. ¶ 32). On July 2, 2009, she was given a Decision Making Deliberation because of continued failure to meet attendance requirements. *Id*. Finally, when these issues continued, her employment was terminated. *Id*.

---

[1] Furthermore, in a hearing on defendants' motion for summary judgment on August 17, 2011, plaintiff argued to the court that defendant failed to follow procedures for disciplinary action in accordance with the North Carolina State Personnel Act. Defendant explained, however, that plaintiff is not subject to the State Personnel Act.

Plaintiff contends that defendant was more lenient with Boger with regard to disciplinary actions taken against her. Unlike plaintiff, however, Boger did not have the numerous written complaints by consumers, nor had she been found attesting to false and incorrect information in the clinical records. (White Aff. ¶ 33; Klucina Aff. ¶ 33). In any event, and most significantly, just like plaintiff, Boger was ultimately fired her own poor performance. Thus, plaintiff has failed to present a prima facie case of race discrimination based on disparate treatment.

In sum, the only "evidence" of race discrimination that plaintiff has presented is her own speculation and conjecture that she was terminated because of her race. This is simply not enough to survive summary judgment. *See Goldberg v. B. Green & Co.*, 836 F.2d 845 (4th Cir. 1988). Therefore, defendant Mecklenburg County is entitled to summary judgment on plaintiff's claim for Title VII race discrimination, and the complaint should be dismissed with prejudice as to the claim against defendant Mecklenburg County.

**B.     Plaintiff's Title VII Claim for Race Discrimination Against Defendants "Mecklenburg County Human Resources Department" and "Mecklenburg County Area Mental Health Authority"**

Next, the claims against Defendants "Mecklenburg County Human Resources Department" and "Mecklenburg County Area Mental Health Authority" will be dismissed because these are merely unit components of defendant Mecklenburg County and are, thus, not separate entities capable of being sued. *See Peterson v. City of Hickory*, 2010 WL 4791901, at *5 (W.D.N.C. Nov. 17, 2010).

## C. Plaintiff's Title VII Claim Against the Individual Defendants

Finally, plaintiff's Title VII claims against the individual defendants Tristen Lorraine and Tracy Klucina fail because it is well settled that individuals cannot be held liable under Title VII. *See Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 181 (4th Cir. 1998). Thus, summary judgment will be granted as to defendants Lorraine and Klucina.

## V. Conclusion

For the reasons stated herein, the court will grant defendants' motion for summary judgment (docket #12) and dismiss plaintiff's claims with prejudice.

Signed: August 29, 2011

Max O. Cogburn Jr.
United States District Judge